**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                            :

JOSEPH B. WARBURTON and EMMA    :      Civil Action No. 04-2474 (FLW)
M. WARBURTON, Individually and on    :
Behalf of a Class of Similarly Situated    :
Individuals                               :
       Plaintiffs,              :
                               :           OPINION
      v.                       :
                               :
FOXTONS, INC., FOXTONS NORTH    :
AMERICA, INC., FOXTONS          :
FINANCIAL, INC., FOXTONS         :
REALTOR, WORLDWIDE FINANCIAL  :
RESOURCES, INC., NEW CENTURY    :
MORTGAGE CORP., COMPANY       :
X,Y,Z, JOHN DOES 1-10             :
          Defendants           :
———————————————————:

**APPEARANCES:**

For Plaintiffs:
Lisa J. Rodriguez
Donna Siegel Moffa
Nicole M. Miles
Trujillo, Rodriguez & Richards, LLC
8 Kings Highway West
Haddonfield, New Jersey 08033

For Defendants Foxtons Inc., Foxtons North America, Inc., Foxtons Financial, Inc., and Foxtons
Realtor:
E. Robert Levy
Levy and Watkinson, PC
510 Thornall Street, Suite 110
Edison, New Jersey 08837

Cynthia G. Swann
Weiner Brodsky Sidman Kider PC
1300 19th Street, NW, Suite 500
Washington, DC 20036

Daniel J. Cohen
Coughlin Duffy, LLP
350 Mt. Kemble Ave., PO Box 1917
Morristown, New Jersey 07962

For Defendants New Century Financial Corporation and New Century Mortgage Corporation:
Mark S. Melodia
Leonard A. Bernstein
Janett D. Pateiro
Reed Smith, LLP
Princeton Forrestal Village
136 Main Street, Suite 250
P.O. Box 7839
Princeton, New Jersey 08543

For Defendants Worldwide Financial Resources, Inc.:
Adam M. Schneider
Schneider & Birnberg
557 Cranbury Road, Suite 15
East Brunswick, New Jersey 08816

**WOLFSON**, **District Judge**

Presently before the Court are three separate Motions to Dismiss Plaintiffs' Class Action Complaint[1] pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6), filed by Defendants Foxtons Inc., Foxtons North America, Inc., Foxtons Financial, Inc., and Foxtons Realtor ("Foxtons Defendants"); Defendants New Century Financial Corporation and New Century Mortgage Corporation ("New Century Defendants"); and Worldwide Financial Resources, Inc. ("Financial Resources").  Plaintiffs' Class Action Complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA"); the Truth in Lending Act ("TILA"); the New Jersey Consumer Fraud Act ("CFA"); the New Jersey Real Estate Sales Full Disclosure Act ("RESFDA"); breach of contract; breach of the covenant of good faith and fair dealing; and unjust enrichment. The Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331, and over the remaining claims pursuant to 28 U.S.C. § 1367(a).  Plaintiffs do not contest dismissal of (1) its RESPA claim arising under 12 U.S.C. § 2604; or (2) its TILA claim based upon the failure to provide a Notice of Rescission pursuant to 15 U.S.C. § 1635, but oppose dismissal of the remainder of their RESPA and TILA claims.  As such, the Court will dismiss Plaintiffs' claims pursuant to 12 U.S.C. § 2604 and 15 U.S.C. § 1635 as unopposed.  For the reasons stated herein, the Court also will dismiss the remainder of Plaintiffs' RESPA and TILA claims, with a right to amend.  The Court will further deny without prejudice Defendants' Motions to Dismiss the state law claims, since I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c) unless Plaintiffs amend their Complaint to state viable federal claims.

---

[1] Plaintiffs Emma and Joseph Warburton have asserted claims in both their individual and class representative capacities.

I.      BACKGROUND

Defendant Foxtons Realtor, a division of Foxtons North America, is a residential real estate brokerage firm that conducts business in New Jersey.  Complaint ("Compl.") at ¶¶ 10-12. On March 16, 2003, Plaintiff Emma Warburton called Foxtons requesting to see a house listed with Foxtons in Sewell, New Jersey ("the property").  Id. at ¶ 27.  Foxtons told Ms. Warburton that in order to see the property, she was required to be pre-qualified for a mortgage.  Id. at ¶ 28. Ms. Warburton was not informed at that time that she would be able to be pre-qualified by another lender, or that the Foxtons prequalification process would cost $199.00.  Id. at ¶¶ 31-32.

Foxtons then transferred Ms. Warburton to a loan officer from Foxtons Financial, Inc., a mortgage brokerage firm that is a wholly owned subsidiary of Foxtons North America, who took her application over the phone and told her that he would call her back to let her know whether she was prequalified.  Id. at ¶¶ 12, 29.  About one hour later, the financial loan officer called Ms. Warburton to tell her that she was approved for a conventional fixed-rate mortgage at a rate of 5.875%, and that she would have to pay the $199.00 application fee to complete the process.  Id. at ¶ 32.

Although Plaintiffs did not pay the application fee at that time, they were permitted to view the property on March 19, 2003.  Id. at ¶ 34.  On March 20, 2003, Plaintiffs contacted Foxtons to place a bid on the property, but were told that their bid would not be accepted until they paid the application fee.  Id. at ¶ 35-36.  Ms. Warburton provided Foxtons Financial with a credit card number to pay the fee at that time, and provided all of the documents required by Foxtons Financial on March 24, 2003.  Id. at ¶ 37-38.

-4-

On March 25, 2003, Plaintiffs received a letter from Foxtons Financial, dated March 24, 2003, stating that they had been had been approved for a mortgage in the amount of $340,000.00. Id. at ¶ 39 and Exh. 1 to Foxton Defendants' Motion to Dismiss.  The Plaintiffs also received the Contract of Sale on March 25, 2003, which they executed and faxed to Foxtons' closing coordinator.  Compl. at ¶ 40.  The seller completed the contract on March 29, 2003; on March 30, 2003, Plaintiffs gave Foxtons a $5,000.00 deposit, and received a copy of the fully executed contract.  Id. at ¶ 41.

On March 26, 2003, Plaintiffs requested a first mortgage for 80% and a second mortgage (a line of credit) for 10%, instead of the $340,000 loan referenced in the March 24 letter.  Id. at ¶ 42.  Plaintiffs then scheduled a closing date for May 30, 2003.  Id. at ¶ 43.  Also on March 26, 2003, Plaintiffs received an updated Good Faith Estimate from Foxtons of a 5.875% interest rate on the loan.  Id. at ¶ 44.

On May 19, 2003, Plaintiffs received a call from Foxtons Financial notifying them that Fannie Mae had not accepted their loan, but that Foxtons would get a loan from another lender. Id. at ¶ 47.  As such, the Foxtons representative asked for updated pay stubs and bank statements. Id.  Plaintiffs allege that until that time, they were unaware that Foxtons was having difficulty obtaining a lender for the mortgage.  Id. at ¶ 46.

Foxtons called Plaintiffs on May 21, 2003 to tell them that their loan had not yet been accepted, but was able to tell them on May 25, 2003 that they had finally located a lender.  Id. at ¶¶ 48, 49.  On May 27, 2003, Plaintiffs received a telephone call from a representative of Defendant Worldwide Financial Resources ("Financial Resources"), who told them that they were not able to provide the loan at a fixed rate of 5.875%.  Id. at ¶ 50.   The Financial Resources

representative told Plaintiffs that because of the number of inquiries on their credit, the best rate that they could offer was a 2-year Adjustable Rate Mortgage at a rate of 8.75%, and that he needed updated financial information.  Id.

On May 30, 2003, Plaintiffs closed on their mortgage loan with New Century Mortgage Corporation, the approving lender.  HUD-1 Settlement Statement attached as Foxtons Defendants Exh. 3 and Plaintiffs Exh. 2 ("HUD-1").  According to the HUD-1, among the "Items Payable in Connection with Loan," were a $500.00 application fee and a 2% yield spread premium paid by New Century to Financial Resources.  Id. at 2.

Plaintiffs argue that the Foxtons Defendants real estate marketing and loan brokering practices were "unscrupulous," and that Plaintiffs and other members of the class were victimized through a scheme that ties real estate services with loan financing services to enhance profits.  They argue that by failing to disclose fees, Foxtons makes itself more attractive to homebuyers, and put itself in a position to gain a commission that it might not have earned had the homebuyers been aware of these additional fees, in particular, the $199.00 prequalification fee, the $500.00 application fee, and the alleged commission paid in the form of a yield spread premium from the mortgage lender.

Plaintiffs also allege that Foxtons encourages home buyers to utilize their in-house financial services by immediately transferring potential buyers to Foxtons Financial, which takes a loan application over the telephone.  Compl. at ¶ 24.  Foxtons allegedly neither informs potential buyers that it is affiliated with Foxtons Financial, nor advises them of their ability to obtain prequalification from another lender.  Id.  Plaintiffs maintain that Foxtons offers consumers mortgage loans at interest rates that Foxtons agrees to honor upon receipt of certain

documents, but fails to take the actions necessary to provide the loans at the rates and terms disclosed.  <u>Id.</u> at ¶ 25.

Plaintiffs also argue that when Foxtons is unable to fulfill the promises that it allegedly made to induce the sale and market its loan brokering services, it will pass off potential homebuyers to other brokers and lenders, for which it receives a commission in the form of a yield spread fee.  <u>Id.</u> at ¶ 26.  When it does so, Foxtons benefits from lenders offering higher mortgage rates, because it receives a percentage of the loan as commission.  <u>Id.</u> at ¶ 7. Homebuyers are allegedly not notified of the switch to a higher interest rate loan until days prior to closing.  <u>Id.</u> at ¶ 6.  With respect to the non-Foxtons Defendants, Plaintiffs allege that the "in processing Plaintiffs' loans, the non-Foxtons defendants failed to comply with disclosure laws to the detriment of the Plaintiffs," and generally engaged in fraudulent and deceptive practices.  <u>Id.</u> at ¶ 8; Plaintiffs' Opposition Brief ("Pl. Opp. Br.") at 1.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

In considering Defendants' Motion to Dismiss for failure to state a claim pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6), the Court accepts as true all of the factual allegations contained in Plaintiffs' complaint and any reasonable inferences that can be drawn therefrom.  <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996).  A claim should be dismissed pursuant to Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-6 (1957).  However, a "court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In deciding Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim.  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004).  A document forms the basis of a claim if it is "integral to or explicitly relied on in the complaint."  Id., citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  To the extent that Plaintiff's allegations are contradicted by the documents attached to the Complaint upon which its claims are based, the Court need not accept such allegations as true.  See Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp., 27 Fed. Appx. 94, 99-100 (3d Cir. Jan. 10, 2002)  (unpublished decision); Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000); Centrella v. Barth, 633 F. Supp. 1016, 1019 (E.D.Pa. 1986).

**B.      Real Estate Settlement Procedures Act ("RESPA")**

Plaintiffs' Complaint asserts claims against all Defendants under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.  Plaintiffs do not contest dismissal of their claims pursuant to 12 U.S.C. § 2604, for failure to timely provide a good faith estimate, in light of the substantial authority that there is no private right of action to enforce this section of RESPA.  See Pl. Opp. Br. at 9.  Plaintiffs' remaining RESPA claim is for violations of Section 8(b) of RESPA, 12 U.S.C. § 2607(b), "Splitting Charges," which provides:

> No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

The allegation central to Plaintiffs' § 2607(b) claim is found in ¶¶ 71 and 72 of the

Complaint, which state as follows:

> 71.  A brokerage fee, undisclosed until Plaintiffs were actually at settlement, was paid by New Century Mortgage Corp. to Foxtons in the amount of a 2% yield spread premium.
> 72.  The payment of this brokerage fee is in violation of RESPA, and consequently, Plaintiffs and members of the Class have suffered damages.

Defendants argue that Plaintiffs' § 8(b) claim fails because Plaintiffs are required to

allege a (1) a "split" of (2) a charge "other than for services actually performed,"– i.e., that the

charge was unearned– in order to state a claim under that section.

The Court will turn first to the question of whether Plaintiffs have adequately alleged that

New Century paid an unearned yield spread premium.  RESPA does not explicitly address the

legality of yield spread premiums, which are payments made by a lender to a broker in exchange

for the broker delivering a mortgage that is above the "par rate" being offered by the lender.  The

payment is usually made as a percentage of the loan, with the percentage being determined by the

extent to which the actual interest rate exceeds the par rate.  See, e.g., Schuetz v. Banc One

Mortgage Corp., 292 F.3d 1004, 1010 (9th Cir. 2002) (quoting Real Estate Settlement Procedures

Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64

Fed. Reg. 10080, 10081 (1999)).[2]

_____

[2]The Department of Housing and Urban Development ("HUD"), which is charged with prescribing "such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes" of RESPA, 12 U.S.C. § 2617(a), has issued two Statements of Policy regarding lender payments to mortgage brokers: one in March, 1999, and a second in October, 2001.  See Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers and Guidance Concerning Unearned Fees under Section 8(b) ("2001 Statement"), 66 Fed. Reg. 53052 (2001); Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers

Yield spread premiums are not illegal if they are "earned" in accordance with § 8(c), which provides that:

> "Nothing in this section shall be construed as prohibiting (1) the payment of a fee...(C) by a lender to its duly appointed agent for services actually performed in the making of a loan, (2) the payment to any person of a *bona fide* salary or compensation or other payment for goods or facilities actually furnished or for services actually performed, (3) payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers."

12 U.S.C. §  2607(c).[3]

The sharing of fees is prohibited where one or more parties has not earned compensation as detailed in § 8(c). 12 U.S.C. § 2607(b).

Plaintiffs argue that the Complaint sufficiently alleges that the fee here was unearned because "the loan ultimately given to Plaintiffs was handled by Defendant Financial Resources... [y]et, the Complaint alleges that the YSP was paid to Foxtons– if Plaintiffs can prove this then it would appear that the YSP was unearned." Pl. Opp. Br. at 12-13.  However, the Court finds that the Complaint as written solely alleges the payment of a yield spread fee, which is not *per se* illegal.  The Complaint does not allege that Financial Resources, Foxtons, or both, received the fee for "other than for services actually performed."  It is also unclear whether Plaintiffs are alleging that the New Century Defendants paid an unearned referral fee to Financial Resources,

_____

("1999 Statement"), 64 Fed. Reg. 10080 (1999).  The Court will refer to these documents collectively as the "Policy Statements."

[3] See also 24 C.F.R. § 3500.14(g)(1) (implementing § 8(c)); 2001 Statement, 66 Fed. Reg. at 53054 (yield spread premiums are not *per se* legal or illegal); Schuetz, 292 F.3d at 1011-14 (noting the 1999 and 2001 Policy Statements' guidance that yield spread premiums are not *per se* legal or illegal and deferring to the two-prong "reasonable relationship" test set forth in those statements to determine the legality of a yield spread premium).

or Foxtons, or both, for sending business to New Century; and/or whether there was a fee-splitting arrangement between Financial Resources and Foxtons.

Furthermore, Plaintiffs' reliance on <u>Brazier III v. Security Pacific Mortg., Inc., et al.</u>, 245 F. Supp.2d 1136 (W.D. Wash. 2003) to support the proposition that they have alleged an unearned fee is inapposite.  HUD has defined the § 8(c) exception in terms of a "reasonable relationship," proscribing such fees where "the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided."  24 C.F.R. § 3500.14(g)(2).[4] In <u>Brazier III</u>, the Court found that there were genuine issues of fact precluding summary judgment with respect to whether the yield spread premium was unearned under the test set forth by HUD to determine whether or not a yield spread premium is reasonably related to the work performed and in line with market rates.  <u>Brazier III</u>, 245 F. Supp. 2d at 1143.  Here, the Court does not reach the question of whether the yield spread premium was reasonably related to the work performed because the face of the Complaint fails to allege an unearned fee.  The Court will therefore dismiss Plaintiffs' claim under § 2607(b), but with leave to amend within thirty (30) days if Plaintiffs are able to do so in good faith.

Defendants also argue that Plaintiffs have not sufficiently alleged a "split" between Financial Resources and Foxtons.  The vast majority of courts have found that the language of § 8(b) prohibiting a "portion, split, or percentage" of an unearned charge is clearly and unambiguously aimed at a sharing agreement rather than a unilateral overcharge.   As such, these courts have determined that the plain meaning of the statute controls, and that the judicial inquiry

---

[4]The Court will discuss this test more fully, <u>infra</u>, because it bears on Plaintiffs' request to amend the Complaint to assert claims under § 8(a).

should end there, rather than proceeding to the second step of the analysis set forth in <u>Chevron</u>

<u>U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984), to determine whether

deference should be accorded to agency interpretation.  They have thus ignored HUD's

interpretation of § 8(b) set forth in the 2001 Statement, which rejects the notion that at least two

parties are required to split an unearned fee for the provision to be violated.[5]  <u>See, e.g.</u>, <u>Haug v.</u>

<u>Bank of Am., N.A.</u>, 317 F.3d 832, 836 (8th Cir. 2003) (holding that district court erred in denying

defendant's motion to dismiss based on HUD Secretary's interpretation of § 8(b) as not requiring

split of overcharge for loan related services); <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875, 879-81

(7th Cir. 2002) ("there is not enough play in the statutory joints to allow HUD to impose its own

'interpretation' under the aegis of <u>Chevron</u>"); <u>Boulware v. Crossland Mortgage</u>, 291 F.3d 261,

265 (4th Cir. 2002)("the view that § 8(b) only applies when there is a kickback or split with a third

party is actually the view that is consistent with RESPA's stated purposes"); <u>Santiago v. GMAC</u>

<u>Mortgage Group, Inc.</u>, 2002 WL 32173572, at *8 (E.D.Pa. Sept. 30, 2003).[6]

---

[5]In the 2001 Statement, the HUD Secretary "interpret[ed] Section 8(b) to mean that two persons are not required for the provision to be violated" and that "[a] single service provider may be liable under Section 8(b) when it charges a fee that exceeds the reasonable value of goods, facilities or services provided."  2001 Statement, 66 Fed. Reg at 53058-59 (2001).

[6]The Court notes the split in authority regarding the appropriate level of deference to be accorded to the Policy Statements in instances where the relevant section of the statute is ambiguous.  Although most courts have analyzed whether the Policy Statements are accorded deference pursuant to <u>Chevron</u>, others have held that these statements are to be accorded a lesser degree of deference assuming deference is appropriate.  These courts have found <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000), holding that "interpretations contained in policy statements... which lack the force of law do not warrant <u>Chevron</u>-style deference," to be controlling.  Instead, these courts hold that HUD's policy statements are entitled to deference pursuant to <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), under which agency interpretations are given careful attention and deference proportional to the agency's specialized experience in a particular area.  <u>Compare</u> <u>Kruse v. Wells Fargo Home Mortgage, Inc.</u>, 383 F.3d 49, 59-61 (2d Cir. 2004) (holding that "notice-and-comment rulemaking is not a *sine qua non* of <u>Chevron</u>

As noted above, the Complaint inadequately alleges why the yield spread premium at issue here is an unearned fee pursuant to § 8(b), and Plaintiffs' RESPA claim is subject to dismissal on that basis alone.  The Court additionally concludes, moreover, that the more convincing reading of the language of § 8(b) is that it unambiguously requires a split of an unearned fee, and agrees with the various courts that have held that the inquiry ends with straightforward statutory interpretation.[7]  Indeed, Plaintiffs do not appear to contest that § 8(b) requires a split, but rather argue solely that their Complaint sufficiently alleges such a split.

_____

deference" and concluding that Chevron deference should be applied where HUD's regulation is in harmony with the language, origins, and purposes of the statute) with Glover v. Std. Fed. Bank, 283 F.3d 953, 962-63 (8th Cir. 2002) (holding that Christensen and Skidmore principles apply, and that "HUD's Policy Statements interpreting its own ambiguous regulation are controlling authority unless they are plainly erroneous or inconsistent with the regulation or the purpose of RESPA.").

With respect to § 8(b), however, the question of whether the 2001 Statement is conclusive under Chevron, or informative and potentially persuasive under Skidmore, has been largely academic because most courts have determined that the statutory language is unambiguous.  These courts have found that the 2001 Statement is at odds with the  and plain language of the statute, and deference is therefore not required.  See, e.g., Krzalic v. Republic Title Co., 314 F.3d at 882-83 (Easterbrook, J., concurring) ("HUD's interpretation... finds no purchase in the statutory text, is essentially unreasoned, and is neither informative nor persuasive... [a]ll of this makes Chevron by the by.")

[7]Two Circuits have found ambiguity in § 8(b).  In Sosa v. Chase Manhattan Mortg. Corp., 348 F.3d 979, 982-84 (11th Cir. 2003), the Eleventh Circuit held that the use of "and" in the phrase "[n]o person shall give and no person shall accept any portion, split or percentage of any charge..." is not clear and unambiguous, and operates to create separate prohibitions on (1) giving and (2) accepting an unearned fee.  The Court thus held that a single party can violate § 8(b), but affirmed dismissal based on plaintiffs' failure to allege an unearned fee.  In Kruse 383 F.3d at 58, the Second Circuit held that majority of the Circuits' interpretation of § 8(b) and the Eleventh Circuit's interpretation in Sosa were both plausible constructions of the word "and."  Because of this ambiguity, it held that the 2001 Statement was to be accorded deference.  Id. at 61.  This Court does not find this reasoning persuasive, and agrees with the majority of other courts that have found that a single party cannot violate § 8(b).

-13-

To the extent that the Complaint as written could be read to allege any split, it would be between New Century and Foxtons. The Foxtons Defendants argue that Plaintiffs cannot state a claim for such a split because the HUD-1 Settlement Statement demonstrates that New Century paid the 2% yield spread premium to Financial Resources, not Foxtons. See Def. Exh. 3; Pl. Exh. 2. Although Plaintiffs acknowledge that the HUD-1 Settlement Statement shows that the 2% yield spread premium was paid to Financial Resources, Plaintiffs assert that Foxtons received a yield spread fee based upon their "good faith belief that Foxtons received compensation for referring the loan to the broker and lender that Foxtons finally located." Pl. Opp. Br. at 7. Plaintiffs suggest that the HUD-1 Settlement Statement does not disprove their allegation, but rather supports their theory that a split occurred in violation of § 8(b). Id. At 11.

A complaint may not be amended by a brief in opposition to a Motion to Dismiss. Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 493 (D.N.J. 1998). To the extent that the Complaint is attempting to allege that the yield spread fee was improperly paid by New Century to Foxtons, that "split" is directly contradicted by the Settlement Statement, and Plaintiffs do not allege the involvement of Financial Resources in any split.[8] Thus, the current Complaint also

---

[8]Plaintiffs submit that the HUD-1 Settlement Statement attached to the Foxtons Defendants brief is not identical to the copy provided by Plaintiffs, and thus raises additional factual questions warranting discovery. Pl. Opp. Br. at 11. The only difference between the documents that the Court is able to discern is a notation typed in the copy submitted by Foxtons on the line referencing the yield spread premium. The addition to the Foxton Defendants' copy is in boldface below:

| Yield Spread Premium 2% paid | Worldwide Financial | **BY NCM (DOO) 6630** |
|---|---|---|
| by New Century Mtg. | | |

This notation, which appears to be the initials of the individual of a New Century employee and an identification number, does not have any bearing on the issues being raised

does not sufficiently allege which parties Plaintiffs believe were splitting the unearned fee, and any amended Complaint must do so.

Plaintiffs also request that if the Court determines that its 8(b) claim fails, it should be granted leave to amend to assert a claim under § 8(a).[9]  Section 8(a), "Business Referrals" provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).

Both § 8(a) and § 8(b) "seek to eliminate kickback or referral fees paid to a third party, but they do so by prohibiting different actions."  Boulware, 291 F.3d at 266.  "Section 8(a) prohibits the payment of formal kickbacks or fees for the referral of business and does not require an overcharge to a consumer... Section 8(b)... requires an overcharge and prohibits conduct where money is moving in the same way as a kickback or referral fee even though there is no explicit referral agreement."  Id.

Plaintiffs' claim as currently pled thus appears to attempt to state a violation of § 8(a) despite nominally referencing § 8(b).  In its current form, however, the Complaint would be insufficient to state a claim under § 8(a), which requires Plaintiffs to allege not just the payment of a yield spread fee, but also that the yield spread fee was not paid for services actually performed

---

before the Court.

[9]Plaintiffs curiously assert that Foxtons received "either all or a split of the yield spread earned by Financial Resources in violation of either 12 U.S.C. § 2607(a) or (b)" in its argument, prior to the Court's giving leave to amend the Complaint to assert a claim under § 2607(a).

such that it does not fall within the exemptions set forth in § 8(c).  See Heimmermann v. First Union Mortg. Corp., 305 F.3d 1257, 1261 (11th Cir. 2002); Schuetz, 292 F.3d at 1009; Glover, 283 F.3d at 964.

RESPA does not speak directly to whether a yield spread premium falls within the boundaries of § 8(c).  As the Court has briefly discussed, HUD defines the § 8(c) exception in terms of a reasonable relationship, stating that where "the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for goods or services actually performed or provided." 24 C.F.R. § 3500.14(g)(2).  In contrast to § 8(b), courts have found that the reasonable relationship test set forth by HUD in the Policy Statements is not forbidden by the text of § 8(c), and that deference to the Policy Statements on this issue is appropriate.[10]  See, e.g., Heimmermann, 205 F.3d at 1261, Schuetz, 292 F.3d at 1263; Glover, 283 F.3d at 961, 965.  The test requires examination of the individual facts of each case for reasonableness.  See 2001 Statement, 66 Fed. Reg. 53052, 53054 ( "The legality of any yield spread premium can only be evaluated in the context of the test HUD established and the specific factual circumstances applicable to each transaction in which a yield spread premium is used.").[11]

---

[10]Because Courts concur that deference is appropriate with respect to this inquiry, the split in authority as to the appropriate level of deference discussed at n.5, supra, is more relevant with respect to claims under § 8(a).  Regardless of the appropriate standard of deference, however, courts have uniformly held that the reasonable relationship test set forth in the policy statement is either conclusive pursuant to Chevron, or a "reasoned view of a responsible agency which is consistent with the statute and the regulation and which constitutes a body of experience and informed judgment that this court may look to as a determinative authority" using a Christensen/Skidmore analysis.  Glover, 283 F.3d at 962-63.

[11]In the1999 Statement, later clarified by the 2001 Statement, HUD set forth a two-part test for courts to use to determine whether a yield spread premium is related to work performed in connection with a real estate transaction.  Under this test, courts are to determine first  whether goods or facilities were provided, or services were performed, by the broker in the transaction.

In light of the need to examine the individual facts of each case for reasonableness under this test, class certification of § 8(a) claims is inappropriate.  See, e.g., O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 741-42 (5th Cir. 2003);  Heimmermann, 205 F.3d at 1263-64;  Schuetz, 292 F.3d at 1014; Glover, 283 F.3d at 966.[12]   A district court has discretion to deny a request to amend if it is apparent that the amendment would be futile.  Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (citations omitted).  Because § 8(a) claims are not appropriate for class certification, the Court finds that allowing Plaintiffs to amend their Class Action Complaint to assert claims on behalf of the class under § 8(a) would be futile.

Defendants' Motion to Dismiss Plaintiffs' § 8(b) claim is hereby granted, and Plaintiffs may make a motion for leave to amend their Complaint to allege that the yield spread fee was paid for "other than services actually performed," and the relevant split.  Plaintiffs also may make a motion for leave to amend their Complaint to assert individual but not class claims under § 8(a).

## C.    Truth in Lending Act ("TILA")

---

Next, courts are to determine whether total compensation is reasonably related to the total set of goods or facilities provided or services performed.  In doing so, courts are not to examine whether services were actually performed in exchange for the yield spread premium, but rather, are to determine whether a particular charge for a mortgage deviates from market rates in the area for similar services.  2001 Statement, 66 Fed. Reg. At 53054.

[12]The 2001 Statement was a specific response to Culpepper v. Irwin Mortgage Corp. (Culpepper III), 253 F.3d 1324, 1331 (11th Cir. 2001), which held that class certification was appropriate where the payment of a yield spread premium was based solely on the amount by which the loan rate exceeded the par rate and where the payment of the yield spread premium was not tied to specific services provided by the broker.  In Heimmermann v. First Union Mortgage Corp., 205 F.3d at 1263-64, the Eleventh Circuit recognized that the 2001 Policy Statement explicitly rejected its decision in Culpepper III.  The Heimmermann court thus held that is always necessary to determine "whether compensable services were provided by the broker and whether the total amount of broker compensation was reasonable in the light of the circumstances of each loan."  Id. at 1264.

Plaintiffs' claim under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., is asserted solely against the New Century Defendants.  Plaintiffs allege that the TILA was violated because the New Century Defendants failed to provide timely disclosures of the costs associated with the extension of credit, and to accurately disclose those costs in a manner that is clear and conspicuous and not misleading, and are therefore liable for damages in accordance with 15 U.S.C. § 1640.[13]

Defendant New Century Financial Corporation ("NCFC") first seeks dismissal of Plaintiffs' TILA claim on the ground that it is not a "creditor."  TILA defines a "creditor" as a "person who both (1) regularly extends... consumer credit... and (2) *is the person to whom the debt arising from the initial consumer credit transaction is initially payable on the face of the evidence of indebtedness*."  (emphasis added).  NCFC argues that because it is not listed on Plaintiffs' Note as the person to whom the debt is payable, and it is not alleged to be the assignee of the loan, it does not fit within the TILA definition of creditor.  The Note names "New Century Mortgage Corporation" as the Lender.   Pl. Exh. 3.[14]

Plaintiffs argue that the Complaint alleges that New Century Mortgage Corporation is a wholly owned subsidiary of NCFC, and as such, is viewed as the same entity for the purpose of liability under TILA.  Plaintiffs incorrectly cite Burns v. Bank of Am., 2003 WL 22990065, at *3

---

[13]Plaintiffs do not oppose the New Century Defendants' Motion to Dismiss their claim under TILA on the ground that the notice of rescission required under 15 U.S.C. § 1635 does not apply to residential mortgage transactions, and the Court will therefore dismiss this portion of Plaintiffs' TILA claim.  See Pl. Opp. Br. at 13.

[14] The Court may consider this document, which is integral to Plaintiffs' TILA claim, without converting the instant Motion into one for summary judgment.

(S.D.N.Y. Dec. 18, 2003), vacated by Burns v. Bank of Am., 115 Fed. Appx. 105, 2004 WL

2861929 (2d Cir. Dec 14, 2004) (unpublished opinion), for this proposition.  In Burns, the issue

was whether Bank of America, an assignee rather than a creditor, could be held liable, not whether

a parent could be held liable for the actions of its subsidiary.

Contrary to Plaintiffs' argument, a parent is not a "creditor" for the purposes of TILA or

Regulation Z solely by virtue of ownership of a subsidiary that fits that definition.  See, e.g., In re

Currency Conversion Fee Antitrust Litig., 265 F. Supp.2d 385, 425 (S.D.N.Y. 2003).  Rather, the

corporate veil will be pierced, and a parent company will be held liable, only where a subsidiary

functions as an instrumentality or alter ego of the parent, and that "the parent has abused the

privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to

circumvent the law."  Coyer v. Hemmer, 901 F.Supp. 872, 883 (D.N.J. 1995) (quoting State Dep't

of Envtl. Prot. v. Ventron, 94 N.J. 473, 501 (1983)).  Plaintiffs here make no such allegations, and

their TILA claim against NCFC will be dismissed.

New Century also argues that Plaintiffs' TILA claim should be dismissed as to New

Century Mortgage Corporation because they are not able to demonstrate either statutory or actual

damages.[15]   Plaintiffs' alleged TILA disclosure violations arise under § 1632(a) and 1638(b),

which govern the appearance and order of certain disclosures, and the form and timing of

disclosures in residential mortgage transactions, respectively.  Section 1640(a) provides the

---

[15]Notably, Plaintiffs do not contest the unavailability of statutory damages in their
opposition brief.

method of calculating damages for TILA violations, and allows for actual and statutory damages.

See 15 U.S.C. § 1640(a)(1),(2).[16]

Courts have held that statutory damages pursuant to § 1640(a) are only available for the items specifically referenced in that section of the statute.  As such, courts have concluded that statutory damages are unavailable for violations of § 1632(a) and § 1638(b).  See Brown v. Payday Check Advance, Inc., 202 F.3d 987, 992 (7th Cir. 2000) (holding that "§ 1640(a) means what it says, that 'only' violations of the subsections specifically enumerated in that clause support statutory damages, and that the TILA does not support plaintiffs' theory of derivative

---

[16] Section 1640(a)(4) states in full:
In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. In connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title, section 1637(a) of this title, or of paragraph (4), (5), (6), (7), (8), (9), or (10) of section 1637(b) of this title or for failing to comply with disclosure requirements under State law for any term or item which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms or items referred to in section 1637(a) of this title or any of those paragraphs of section 1637(b) of this title. In connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title or who uses the credit card or charge card. In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title. With respect to any failure to make disclosures required under this part or part D or E of this subchapter, liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 1641 of this title. 15 U.S.C. § 1640(a)(4).

violations under which errors in the form of disclosure must be treated as non-disclosure of the key statutory terms," and that claims under § 1632 and § 1638(b) therefore did not support statutory damages).  See also Baker v. Sunny Chevrolet, Inc., 349 F.3d 862, 869 (6th Cir. 2003) (holding that form and timing violations pursuant to § 1638(b) do not warrant statutory damages award); Graham v. RRR, LLC, 202 F. Supp. 2d 483, 488 (E.D.Va. 2002) ("[t]he only remedy for failing to timely make disclosures is actual damages") (citations omitted); Wojcik v. Courtesy Auto Sales, Inc., 2002 WL 31663298, at *5 (D. Neb. Nov. 25, 2002) (holding that alleged TILA violations based on timing of disclosures was did not entitle plaintiffs to statutory damages); Turk v. Chase Manhattan Bank, USA, NA, 2001 WL 736814, at *2-*3 (S.D.N.Y. June 11, 2001) (holding that statutory damages are unavailable for violations of § 1632(a)). The Court agrees, and finds that statutory damages are not available for the alleged violations of § 1632(a) and § 1638(b).

       With respect to actual damages, Section 1640(a)(1) provides that individual or class action plaintiffs may recover "any actual damages sustained by such person as a result of the failure."  15 U.S.C. § 1640(a)(1).  New Century argues that in order to recover actual damages, Plaintiffs must demonstrate that they relied to their detriment on a disclosure.  New Century argues that a showing of detrimental reliance is impossible based on the allegations in the Complaint, as Plaintiffs do not allege that they read and relied upon a disclosure, but rather that they did not receive the TILA disclosure until the closing.

       The majority of courts that have considered whether detrimental reliance is an element in a TILA claim for actual damages have found such reliance to be required.  See Cannon v. Cherry Hill Toyota, Inc.,161 F. Supp. 2d 362, 369 (D.N.J. 2001) (collecting authority).  See also Turner v.

Beneficial Corp., 242 F.3d 1023, 1026 (11th Cir. 2001) (citations omitted); Perrone v. General

Motors Acceptance Corp., 232 F.3d 433, 436 (5th Cir. 2000) ("Evaluating whether an actual harm

results from a disclosure violation requires, first, that the consumer relied on the particular lease

terms; second, that the disclosure violation deterred him from inquiring into other lease

alternatives; and third, that the alternatives would save money.  In essence, the statute is addressing

and seeking to combat detrimental reliance.").

　　　　In so holding, courts have noted that the legislative history behind TILA supports this

interpretation:

> Congress provided for statutory damages because actual damages in most cases
> would be nonexistent or extremely difficult to prove.  To recover actual damages,
> consumers must show that they suffered a loss because they relied on an inaccurate
> or incomplete disclosure.  H.R. Rep. No. 193,104, 104th Cong., 1st Sess. (1995).
> The legislative history emphasizes that TILA provides for statutory remedies on
> proof of a simple TILA violation, and requires the more difficult showing of
> detrimental reliance to prevail on a claim for actual damages.

Turner, 242 F.3d at 1028.  See also Cannon, 161 F. Supp. 2d at 269; In re Currency Conversion

Fee Antitrust Litig., 265 F. Supp. 2d at 429.

　　　　In Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915 (8th Cir. 2000), the Eighth Circuit

set forth several required elements for establishing actual damages that has been adopted by

numerous courts, including Cannon in this district.  Under this test, "a plaintiff must show that: (1)

he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the

disclosure statement been accurate, he would have sought a lower price; and (4) he would have

obtained a lower price."  Peters, 220 F.3d at 917.

　　　　Plaintiffs, citing no authority, argue that the detrimental reliance test requiring that the

disclosure be read only applies where disclosures are allegedly *inaccurate*, whereas the allegations

-22-

in the instant Complaint are based on the *timing* of the disclosures.  Because of the difficulty inherent in proving actual damages, particularly with respect to form and timing violations, few courts have discussed actual damages pursuant to § 1638(b) other than to note than, in contrast to statutory damages, they are available.  See, e.g., Nigh v. Koons, 143 F. Supp. 2d 535, 549 (E.D.Va. 2001).  This is perhaps why Plaintiffs fail to uncover any cases supporting their proposition.  In Hamilton v. O'Connor, 2004 WL 1403711 (N.D. Ill. June 23, 2004), however, the Northern District of Illinois, in an unpublished decision, articulated an analysis more befitting a TILA violation based on the form and timing of a disclosure than the test set forth in Peters.

In Hamilton, the plaintiffs alleged that the defendant violated 15 U.S.C. § 1368(b)(1) by failing to provide Plaintiffs with the required disclosures in a form that they could keep before credit was extended.  Id. at *4.  The Court held that in order to prove actual damages, plaintiffs were required to demonstrate that they were "effectively prevented from obtaining better credit terms elsewhere," which required a showing that "not only that they would have sought a different warranty or lower price" but also that "they would have obtained another warranty or a lesser price."  Id. at *6 (citations omitted).  Because Plaintiffs in that case did not present evidence that they would have obtained financing at a better rate, the Court granted Defendant's motion for summary judgment based on Plaintiffs' inability to demonstrate actual damages.

The Court finds this analysis convincing, and a better statement of the type of reliance involved in cases alleging a timing violation, as opposed to a violation based on the accuracy of the disclosure.  It thus finds that Plaintiffs may state a claim for actual damages despite a failure to allege that there was a disclosure that they read, and upon which they relied.  However, Plaintiffs have not alleged in the current Complaint that they would have sought a loan at a lower price, or

that they would have been able to obtain a loan at a lower price, in order to support a claim for actual damages.  The Complaint alleges solely that Plaintiffs closed on the home that they were selling and the home that they were purchasing on the same date, with the closings scheduled at noon and 2:00 P.M., respectively, and that they did not receive the New Century loan documents with the required TILA disclosures until 4:10. Compl. at ¶ 46, 52, 53.  Obviously, Plaintiffs need not produce evidence supporting their actual damage claim, but, at a minimum, must allege the basis for the claim, if they can do so in good faith.  As such, at this juncture, Plaintiffs have failed to state a claim upon which relief can be granted.  See Haun v. Don Mealy Imports, Inc., 285 F. Supp. 2d 1297, 1303-04 (M.D. Fla. 2003) (dismissing TILA claim where plaintiff did not allege any facts that, if proven, would constitute actual damages).[17]

Since Plaintiffs have not alleged the basis for a claim for actual damages, the Court will dismiss Plaintiffs' TILA claim against Defendant New Century Mortgage Corporation, with leave to amend within thirty (30) days if Plaintiffs are able to do so in good faith.  The Court also notes the wealth of authority holding that TILA claims based on actual damages, as opposed to statutory damages, are inappropriate for class certification,[18] and instructs Plaintiffs to amend their Complaint accordingly.

### D.      State Law Claims

Because the Court is dismissing Plaintiffs' federal claims, and thus, there would be no basis for asserting federal jurisdiction, the Court will deny Defendants' motions as to the state law

---

[17]The Court also notes that, in addition, Plaintiffs fail to provide a statutory reference to § 1638 in Count II, leaving Defendants and the Court to guess as to the nature of their claims.

[18]See, e.g., Perrone, 232 F.3d at 439; Stout v J.D. Byrider, 228 F.3d 709, 718 (6th Cir. 2000).

claims without prejudice.  In the event that Plaintiffs amend their Complaint to state viable federal

claims, the Court will entertain Defendants' Motions to Dismiss Plaintiffs' state law claims.  If no

such motion to amend is made, or if the motion is denied, then the case will be closed since the

Court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367(c).

## III.    CONCLUSION

The Foxtons, Financial Resources, and New Century Defendants' Motion to Dismiss Count

I of Plaintiffs' Complaint is hereby granted without prejudice.  The New Century Defendants'

Motion to Dismiss Count II of Plaintiffs' Complaint is hereby granted without prejudice.  An

appropriate order will follow.